IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

| | |
|---|---|
| MOORECARE AMBULANCE SERVICE, LLC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:09-0078 |
| ) | Judge Trauger |
| THE DEPARTMENT OF HEALTH AND HUMAN ) | |
| SERVICES and KATHLEEN SEBELIUS, in her ) | |
| official capacity as Secretary/Director of D.H.H.S. ) | |
| ) | |
| Defendants. ) | |
| ) | |

## MEMORANDUM AND ORDER

Pending before the court is the plaintiff's Motion for Summary Judgment (Docket No. 18), to which the defendants have responded (Docket No. 23). For the reasons discussed herein, the parties' briefing on key issues is insufficient, and, therefore, the court will direct further briefing as discussed below.

### RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

The plaintiff, MooreCare Ambulance Service, LLC, is an ambulance service with its principal office in Lawrenceburg, Tennessee.[1] The defendants are the Department of Health and

---

[1] The plaintiff did not attach a Statement of Material Facts to its motion, but rather provided, in list form, a factual summary in its Memorandum in support of its motion. (Docket No. 18 Ex. 1.) The defendants provided a similar summary. (Docket No. 23 at 7-10.) The factual background is drawn from these submissions and from the "Administrative Record (A.R.)," which was filed under seal (Docket No. 9). For purposes of the present round of summary judgment briefing, the parties have agreed that "there are no material facts in controversy." (Docket No. 17.)

Human Services (DHHS) and its Secretary, Kathleen Sebelius, who is sued in her official capacity. The DHHS is the department within the federal government responsible for the administration of the Medicare program.

MooreCare provided ambulance services to Medicare beneficiaries, including transporting chronically/terminally ill patients from nursing homes to treatment centers, such as renal care facilities. Following each ride, MooreCare submitted a claim to the relevant Medicare Carrier (CIGNA) for the service, and, after reviewing the submission, CIGNA paid the claim.

In May 2007, AdvanceMed, which contracts with Medicare to "safeguard" Medicare from abuse, "requested all medical records and supporting documentation" from MooreCare "that supports the billing of claims for dates of service January 1, 2005 through September 30, 2006." (A.R. at 321.) After receiving those materials, AdvanceMed reviewed a "random sample of [60] claims" and found a "high level of payment error." (*Id.* at 323; Docket No. 23 at 8.) Specifically, in 89.32 percent of the claims examined, AdvanceMed found that Medicare was improperly billed for the ambulance service. (*Id.* at 323; Docket No. 23 at 8.) On the claims specifically reviewed, AdvancedMed determined that Medicare had been overbilled in the total amount of $19,131.59. (*Id.*) AdvanceMed extrapolated this finding across all claims submitted to Medicare during this period and determined that Medicare had overpaid the plaintiff $2,114,613.00. (*Id.*)

Through the standard administrative appeals process that is established by statute and regulation, MooreCare appealed, first seeking a "redetermination," which is a *de novo* review by

the Medicare Carrier, CIGNA. CIGNA determined that the "assessed overpayment" decision by AdvanceMed was "fully valid" and affirmed the overpayment amount. (A.R. at 282.) The plaintiff maintains that CIGNA "did not do a new review, but simply adopted the prior decision" of AdvanceMed. (Docket No. 18 Ex. 1 at 2.)

Whatever the case, the plaintiff then appealed to the Qualified Independent Contractor (QIC), Q2 Administrators, which was hired by Medicare to make an "independent decision" regarding the dispute. (A.R. at 202.) The QIC issued a "partially favorable" ruling to the plaintiff, finding that the "actual overpayment amount can be reduced from $19,131.59 to $11,170.33." (*Id.*) The plaintiff then appealed this ruling to the Administrative Law Judge. (*Id.* at 119.)

In his decision, the ALJ reviewed 23 claims that had been found to be not properly payable and reversed this decision as to 13 claims. (*Id.* at 64-80.) The plaintiff then appealed to the Medicare Appeals Council (MAC), which is the highest level of administrative review and whose decisions embody the final conclusions of the Secretary. (*Id.* at 40.) In a September 4, 2009 opinion, the MAC conducted a review of all 23 claims that had been reviewed by the ALJ. The MAC affirmed some findings but also reversed several that had been favorable to the plaintiff. (*Id.* at 9-33.)

The central issue before the MAC was whether the plaintiff had provided sufficient evidence that the ambulance trips under review were medically necessary, which is largely concerned with whether all other forms of transport, such as a wheelchair van, were contraindicated. (*See id.*) The plaintiff largely relied on Physician Certification Statements

3

(PCS) from the patient's physician that stated that the patient could only safely travel by ambulance and "run reports," which are the plaintiff's report of the details of each trip. (*Id.*)

Relying on its interpretation of the Code of Federal Regulations and the Medicare Benefit Policy Manual (MBPM), the MAC concluded that "a signed physician's certification alone is insufficient to support Medicare coverage." (*Id.* at 11.) The MAC then went on to examine each claim and whether the record supported the use of an ambulance. (*Id.* at 11.) The MAC found that, in 20 cases, the claim was not properly covered by Medicare, usually because the necessity of an ambulance had not been clearly demonstrated by the record. (*Id.* at 11-30.)

On November 6, 2009, the plaintiff filed its Complaint in this case, asserting that the MAC had made various errors of law in evaluating the claims and that various procedural errors had been made throughout the administrative review process. (Docket No. 1.)

## ANALYSIS

### I. Standard of Review

Under the Medicare Act, the court's review of the Secretary's decision is limited to whether the decision comports with applicable law and its findings of fact are supported by substantial evidence. *Brainard v. Secretary of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*

### II. The Motion for Summary Judgment

The plaintiff's only potentially viable argument at this stage is that, under the relevant

4

federal regulations, the 20 claims at issue were properly billed to Medicare.[2] Medicare law and the accompanying regulations provide guidance in determining when an ambulance trip for a patient is reimbursable by Medicare. As a basic rule, ambulance services are covered "where the use of other methods of transportation is contraindicated by the individual's condition, but . . . only to the extent provided in regulations." 42 U.S.C. § 1395x(s)(7).

The relevant regulation, 42 C.F.R. 410.40(d)(1), provides the "general rule":

Medicare covers ambulance services . . . only if they are furnished to a beneficiary whose medical condition is such that other means of transportation are contraindicated. The beneficiary's condition must require both the ambulance transportation itself and the level of service provided in order for the billed service to be considered medically necessary." Non-emergency transportation via ambulance is "appropriate" where "the beneficiary is bed-confined, and it is documented that the beneficiary's condition is such that other methods of transportation are contraindicated; or, if his or her medical condition, regardless of bed confinement, is such that transportation by ambulance is medically required. Thus, bed confinement . . . is one factor that is considered in

---

[2] The plaintiff makes a series of unavailing arguments. The plaintiff argues that he was denied "due process" because CIGNA "did not in fact make a new and independent decision on the claims at issue" but simply adopted AdvanceMed's findings. (Docket No. 18 Ex. 1 at 7.) The plaintiff has pointed to no recognized, protected property interest that it was deprived of nor has it provided any clear evidence that it has been denied "notice and a meaningful opportunity to be heard," which is the "core of due process." *LaChance v. Erickson*, 522 U.S. 262, 266 (1998). Additionally, the limited purpose of this proceeding is to consider the MAC's decision, not CIGNA's conduct. The plaintiff also argues that the claims never should have been re-opened by AdvanceMed in the first place. (Docket No. 18 Ex. 1 at 14-16.) The initial determination to re-open claims, however, is not reviewable. 42 C.F.R. § 405.926(l). Also, while the plaintiff argues that the MAC should have only conducted a review of the portions of the ALJ's decision that were unfavorable to the plaintiff, the plaintiff requested a broad review of the ALJ's decision (A.R. at 40), and the MAC is authorized to conduct a "de novo" review of the ALJ's decision. 42 U.S.C. § 1395ff(d)(2)(A)-(B). The plaintiff also argues that there is no continuing basis for extrapolation, because the "high rate of error," initially used to justify extrapolation under the relevant regulations, no longer exists. (*See* Docket No. 18 Ex. 1 at 11.) The court's view is that the proper calculation of the amount that Medicare was overbilled should await the court's determination of how many of the sample claims were actually valid. As discussed below, this stage has not yet been reached.

medical necessity determinations.

The regulations also provide a "special rule" for "nonemergency, scheduled, repetitive ambulance services." 42 C.F.R. § 410.40(d)(2). Under this rule, "Medicare covers medically necessary nonemergency, scheduled, repetitive ambulance services if the ambulance provider or supplier, before furnishing the service to the beneficiary, obtains a written order from the beneficiary's attending physician certifying that the medical necessity requirements of paragraph (d)(1) of this section are met. The physician's order must be dated no earlier than 60 days before the date the service is furnished."

The plaintiff maintains that the claims at issue here concern patients receiving "nonemergency, scheduled, repetitive ambulance services" and that each patient had a certification of medical necessity provided within the 60-day window. (Docket No. 18 Ex. 1 at 3- 4.) Under the plain language of the regulation, the plaintiff argues, this should be enough for coverage under subsection (d)(2). (*Id.* at 4-6.) The defendants' argument on this issue essentially restates the relevant regulations and broadly requests that the court adopt the MAC's conclusions. (Docket No. 23 at 11-13.)

The court agrees with the plaintiff's interpretation of the regulation. Clearly, the C.F.R. establishes a "special rule" for certain kinds of repetitive services, whereby a sufficiently detailed and timely "doctor's note" demonstrates medical necessity. Therefore, where the service is "scheduled" and "repetitive" and the "doctor's note" is sufficient, additional review of the record to determine medical necessity is not called for under the regulations.

While the court agrees with the plaintiff's interpretation of the regulations, the plaintiff's

briefing is insufficient, because it does not point to evidence in the record – for each claim – demonstrating that the service performed on the claim date was "scheduled" and "repetitive." Without this, the court is left at sea in the administrative record, guessing as to which claims of the 20 are actually covered by the "special rule," let alone the "general rule."

Therefore, the first step in supplemental briefing will be for the plaintiff to clearly identify the portions of the record that demonstrate that a specific claim was for a "scheduled" and "repetitive" service. Once the plaintiff does that, it should, as a matter of completeness, point to where in the record a timely PCS exists that "certif[ies] that the medical necessity requirements" are met. Additionally, where evidence on the "scheduled" and "repetitive" nature of the service is lacking, the plaintiff should proceed under the general rule and, for each claim, demonstrate that the MAC erred in finding that the ambulance service was contraindicated. In short, a claim-by-claim analysis, with specific and precise citation to the record, is required for the court to have any chance at fairly determining where the MAC erred.

To be clear, from its initial review, the court has serious concerns about the MAC opinion. The MAC does not cite the "special rule" and, at times, its opinion on the necessity of the ambulance service appears unsupported. (A.R. at 9-11.) An example from one of the 20 claims illustrates. L.D. was transported by the plaintiff via ambulance on July 11, 2005 from his nursing home to the hospital for a chest x-ray. (*Id.* at 13.) While the ALJ found the ambulance service appropriate, the MAC did not, stating that, "while the physician stated that the beneficiary required ambulance transport by stretcher, the physician did not describe the beneficiary's condition or how that condition required ambulance transport. The beneficiary's

vital signs were stable and he was alert to person. . . . Despite the physician's indication that the beneficiary could not sit, the record shows that the beneficiary was found at his residence sitting in a chair and was returned upon discharge . . . to a chair." (*Id.*)

The credibility of the MAC's ruling is undermined by the record. The run report for the July 11, 2005 trip states that, when the ambulance arrived, L.D., who was 89 and had recently suffered a stroke, was "laying in chair. . . . awake but did not respond," and, when he was returned from the hospital, he was "moved to chair." (*Id.* at 431.) The PSC, which is dated July 11, 2005, states that L.D. cannot sit for the "duration of transport without pain and/or possibility of further injury." (*Id.* at 442.) There is nothing in the run report or the PSC to suggest that any other form of transport besides an ambulance would have been reasonable under the general rule.

In sum, the court is, for many of these claims, sympathetic to the plaintiff's position but is not, based upon the parties' briefing, in the position to assess each MAC ruling. Therefore, within 45 days, the plaintiff shall file a supplemental memorandum that addresses in each case, with specific citation to the record, where the MAC erred in applying the special and/or general rule. Additionally, in any case where the MAC reached its decision based upon a technical or procedural issue (see A.R. at 30 for instance), the plaintiff must specifically argue why the MAC's decision was incorrect. The defendants will have 30 days to file a response brief. The parties may request additional time as needed.

It is so ordered.

Enter this 4th day of March 2011.

_____
ALETA A. TRAUGER
United States District Judge